## PEVELY DAIRY CO. v. BORDEN PRINTING CO.

### No. 9744.

Circuit Court of Appeals, Ninth Circuit.

Oct. 20, 1941.

A. W. Boyken and Boyken, Mohler & Gordon, all of San Francisco, Cal., and Lawrence C. Kingsland, Edmund C. Rogers, and Kingsland, Rogers & Ezell, all of St. Louis, Mo., for appellant.

Hackley & Hursh, Roy C. Hackley, Jr., and Jack E. Hursh, all of San Francisco, Cal., for appellee.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

This was an action by appellant, Pevely Dairy Company, against appellee, Borden Printing Company, for infringement of claims 4, 7, 8 and 11 of patent No. 1,829,-915, the one claim of patent No. 1,923,856 and claim 3 of patent No. 1,999,011. Defenses were that the claims were invalid, and that, if valid, they were not infringed. The District Court held the claims invalid and dismissed the action on that ground. From the judgment of dismissal this appeal is prosecuted.

### Patent No. 1,829,915.

Patent No. 1,829,915 was applied for by Joseph J. Wasser on December 18, 1930, and was issued to appellant (Wasser's assignee) on November 3, 1931. The specification states: "This invention relates to display devices;[1] and has special reference to display devices constructed and designed and adapted so that they may be easily passed over the upper ends of the present

---

[1] As used by Wasser, the term "display device" means a device for displaying advertising matter.

commercial milk bottles and seated upon the curved shoulders of the bottles in position to display any advertisements contained on the display devices."

Claims 4, 7, 8 and 11 [2] describe devices each of which comprises an arcuate piece of pliable material and means for pivotally connecting the ends thereof. Being arcuate, the piece of material forms, when its ends are connected, a truncated hollow cone. The pivotal connection permits the ends of the piece to oscillate, thereby varying the diameter of the cone—enlarging its upper diameter, diminishing its lower diameter.

■ Devices substantially similar to those described in claims 4, 7, 8 and 11 were known and used by others long prior to Wasser's claimed invention. One of many such devices was described in patent No. 1,309,263 issued to R. A. Spellman on July 8, 1919. Spellman's device, a paper lamp shade, was also a display device—a device for displaying advertising matter.[3] This appears from a drawing which accompanied and formed part of Spellman's specification.[4] Spellman's device comprised all elements of the device described in claim 11. Accordingly, and properly, the trial court held that claim 11 was anticipated and for that reason invalid.

Except as indicated below, Spellman's device comprised all elements of the devices described in claims 4, 7 and 8. The device described in claim 4 is "for application to a bottle having a cylindrical body portion, a tapered neck portion defining an enlarged mouth, and an enlarged top flange." It has "a lower diameter approximately equal to the diameter of the body portion of the bottle and an upper diameter approximately equal to an intermediate diameter of the tapered neck portion of the bottle." The device described in claim 7 is "for milk bottles." Its diameter is not specified. The device described in claim 8 is "for use on a milk bottle having a cylindrical body and a tapered upper portion." It has "a diameter at its lower end approximately equal to the diameter of the bottle for which the device is intended and * * * a diameter at its upper end approximately equal to an intermediate portion of the tapered upper end of the bottle for which the device is intended, whereby said device will be supported on the lower

---

[2] Claims 4, 7, 8 and 11:

"4. A display device for application to a bottle having a cylindrical body portion, a tapered neck portion defining an enlarged mouth, and an enlarged top flange; said device comprising an arcuate piece of pliable material adapted to be formed into a truncated conical member having a lower diameter approximately equal to the diameter of the body portion of the bottle and an upper diameter approximately equal to an intermediate diameter of the tapered neck portion of the bottle, and means for so connecting the ends of said arcuate piece as to hold the same in the form of the truncated conical member and permitting enlargement of the upper diameter of the member."

"7. A truncated cone band for milk bottles formed from an arc shaped blank provided with a tab at one end and a notch at the opposite end, the relative shapes of the notch and tab permitting a swinging motion between the respective ends when joined so as to permit an enlargement of the diameter on the small end of the cone.

"8. A display device for use on a milk bottle having a cylindrical body and a tapered upper portion comprising an arcuate piece of pliable material in hollow truncated form and having a diameter at its lower end approximately equal to the diameter of the bottle for which the de-

vice is intended and having a diameter at its upper end approximately equal to an intermediate portion of the tapered upper end of the bottle for which the device is intended, whereby said device will be supported on the lower end of the tapered portion of the bottle in a position in which the lower edge of said device is approximately at the upper end of the cylindrical body of the bottle, and relatively movable interlocking means connecting the end portions of said piece of material together and permitting enlargement of the upper diameter of the device."

"11. A display device comprising a flat section of pliable material having its upper and lower edges curving, said flat section being adapted to be rolled into tapered form with its ends overlapping and having the upper and lower edges respectively of the overlapping portions of said ends approximately even with each other, and means integral with one end interlocking with the other end of said section and pivotally connecting said overlapping ends in said relationship, whereby the smaller end of the device may enlarge to permit said device to be passed onto a support."

[3] See footnote 1.

[4] The drawing shows a lamp shade and, printed on the lamp shade, this advertisement: "Buy Liberty Bonds."

end of the tapered portion of the bottle in a position in which the lower edge of said device is approximately at the upper end of the cylindrical body of the bottle."

Spellman said nothing about bottles. His device was for use "on electric lamps, and especially those which are suspended at the lower ends of cords, as is frequently necessary in offices and other places." It was to be placed "around the electric light bulb, or preferably around the socket just above the bulb," so that it would "then rest on the lamp in the desired manner." Its upper diameter was such as "to accommodate the upper portion of the bulb, so that the shade will hang properly and will be properly balanced on the lamp." Its lower diameter was not specified.

Though apparently the idea of putting a display device on a bottle did not occur to Spellman, it did occur to and was disclosed by others long before Wasser disclosed it. A display device designed for use on milk bottles was described in patent No. 1,473,313 issued to C. D. Piatt on November 6, 1923. A display device designed for use on wine bottles was described in Swiss patent No. 110,722 issued to Carl Huber on July 1, 1925. Thus, in effect, what Wasser did was to apply an old device (Spellman's lamp shade) to a use which, for it, was new, though other devices (Piatt's and Huber's) had long been applied to that same use. Did this constitute invention?

█ It is well settled that mere application of an old device to a new use does not constitute invention. Roberts v. Ryer, 91 U.S. 150, 159, 23 L.Ed. 267; Peters v. Hanson, 129 U.S. 541, 542, 553, 9 S.Ct. 393, 32 L.Ed. 742; Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U.S. 11, 18, 12 S.Ct. 601, 36 L.Ed. 327; Lovell Mfg. Co. v. Cary, 147 U.S. 623, 634, 635, 13 S.Ct. 472, 37 L.Ed. 307; Miller v. Eagle Mfg. Co., 151 U.S. 186, 201, 14 S.Ct. 310, 38 L.Ed. 121; Powers-Kennedy Contracting Co. v. Concrete Mixing & Conveying Co., 282 U.S. 175, 186, 51 S.Ct. 95, 75 L.Ed. 278. On the other hand, adaptation of an old device to a new use may constitute invention, especially where the device is transferred from one art to another. C. & A. Potts & Co. v. Creager, 155 U.S. 597, 606-609, 15 S.Ct. 194, 39 L.Ed. 275. But where such adaptation—with or without such transfer—is the product of mere mechanical skill, it does not constitute invention. C. & A. Potts & Co. v. Creager,

supra; Concrete Appliances Co., v. Gomery, 269 U.S. 177, 185, 46 S.Ct. 42, 70 L. Ed. 222.

█ Here there was no transfer from one art to another. Spellman's device and the devices described in claims 4, 7 and 8 belonged to the same art, namely, the art of advertising. Application of Spellman's device to its new use—use on a bottle instead of a lamp—required but little, if any, adaptation. Claim 7 shows no adaptation whatever. Claims 4 and 8 show none except as to size. As to that, they merely provide, in effect, that the diameter of the device shall be such as to make it fit the bottle for which it is intended. This may or may not involve a change in the size of Spellman's device. Whether it does or not is unimportant, for mere change in size does not constitute invention. Klein v. Seattle, 9 Cir., 77 F. 200, 204; Keszthelyi v. Doheny Stone Drill Co., 9 Cir., 59 F.2d 3, 8; Oliver-Sherwood Co. v. Patterson-Ballagh Corp., 9 Cir., 95 F.2d 70, 74. The adaptations, if any, shown by Wasser are the product of mere mechanical skill. We conclude, as did the court below, that claims 4, 7 and 8 are invalid for lack of invention.

█ There is evidence that Wasser's claimed invention has achieved a considerable measure of commercial success. Evidence of this kind is often persuasive, especially when the question of patentable novelty or invention is in doubt. Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 495, 496, 23 L.Ed. 952; Magowan v. New York Belting Co., 141 U.S. 332, 343, 12 S.Ct. 71, 35 L.Ed. 781; C. & A. Potts & Co. v. Creager, supra. But such evidence is by no means conclusive. McClain v. Ortmayer, 141 U.S. 419, 428, 12 S.Ct. 76, 35 L.Ed. 800; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 56, 43 S.Ct. 322, 67 L.Ed. 523; John E. Thropp's Sons Co. v. Seiberling, 264 U.S. 320, 330, 44 S.Ct. 346, 68 L.Ed. 708. In the case before us, it cannot overcome the clear lack of novelty and invention. Compare Celite Corp. v. Dicalite Co., 9 Cir., 96 F.2d 242, 249; Pacific Marine Supply Co. v. A. S. Boyle Co., 9 Cir., 103 F.2d 288, 292; Bramlett v. National Unit Corp., 9 Cir., 104 F.2d 17, 19.

## Patent No. 1,923,856.

██ The one claim of patent No. 1,923,856 was held invalid for lack of novelty and lack of invention. That holding is

not challenged here [5] and, therefore, is accepted as correct.

### Patent No. 1,999,011.

Patent No. 1,999,011 was applied for by Wasser on August 17, 1933, and was issued to appellant on April 23, 1935. The specification states: "This invention relates to display devices,[6] and has special reference to a display device composed of a strip of pliable material, such as paper, and adapted to be shaped into truncated form with a lower diameter approximately equal to the diameter of the body of a commercial milk bottle and an upper diameter slightly greater than the diameter of an intermediate portion of the tapered neck of the bottle." Claim 3 reads as follows: "3. A display device for application to a bottle having a cylindrical body portion, a tapered neck, and an enlarged top flange, said device comprising an arcuate piece of pliable material adapted to be formed into a truncated cone by overlapping the ends and having a lower diameter approximately equal to the body portion of the bottle and an upper diameter approximately equal to the top flange of the bottle, the wall of the cone being so shaped that when the lower edge of the device is concentric with the longitudinal axis of the bottle portions the upper edge of the device will be located different distances from said axis, and means for immovably connecting the overlapping ends of the piece of material."

 Appellee is said to have infringed claim 3 by making, selling and using devices exemplars of which are in evidence as exhibits 21 and 22. Each of these devices comprises an arcuate piece of pliable material and means for connecting its overlapping ends, such means consisting of slits and tabs, but neither device comprises any means for *immovably* connecting the ends of the piece. Hence neither device infringes claim 3.

 Claim 3 was held invalid for lack of novelty and lack of invention. We agree with that holding. Therefore, insofar as it relates to claim 3, dismissal of this action is affirmed on two grounds, namely, (1) that the claim is invalid, and (2) that, if valid, it was not infringed. That we may affirm on a ground not assigned by the trial court is well settled. L. McBrine Co. v. Silverman, 9 Cir., 121 F.2d 181, 182.

Judgment affirmed.

---

[5] Appellant's brief states, incorrectly, that no appeal was taken as to patent No. 1,953,856. Actually, the appeal is from the whole judgment. It is true, however, that, as to patent No. 1,953,856, no error is specified.

