---

## In re ZENK.

(Court of Appeals of District of Columbia. Submitted May 11, 1920. Decided June 2, 1920.)

No. 1309.

**1. Patents ⬤➝72—Mold for commutators anticipated.**

A mold for commutators *held* to disclose nothing not covered by the prior art.

**2. Patents ⬤➝120—Patent for article not bar to patent for process.**

A patent for an article was not a bar to a patent for the process used in making it, where the application for a patent for the process was a division of and was copending with the application which resulted in the patent for the article, even though the method or process was disclosed; it not being claimed.

**3. Patents ⬤➝72—Process for molding commutators not anticipated.**

A process for molding commutators *held* not anticipated by anything in the prior art.

**4. Patents ⬤➝36—Doubt resolved in favor of inventor.**

Where the question of patentability is doubtful, the doubt will be resolved in favor of the inventor on application for patent.

Appeal from Commissioner of Patents.

In the matter of the application of Charles C. Zenk for a patent for a mold and method or process of making commutators. From a decision rejecting the application, he appeals. Affirmed as to one count, and reversed as to others.

E. B. H. Tower, Jr., of Milwaukee, Wis., and R. O. Hinkle, of Chicago, Ill., for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the Commissioner of Patents rejecting the application of appellant Zenk for a patent for a mold and method or process of making commutators for electric generators and motors. Of the seven claims, the following three are illustrative:

"1. The method of making a commutator which consists in arranging commutator segment bars circumferentially in spaced relation, surrounding certain sides of said bars with insulating material having the property of hardening under the action of heat and pressure, and applying heat and pressure to harden said material and unite it into a solid body for insulating the bars and holding them together."

"6. The method of making a commutator which consists in arranging commutator segment bars circumferentially in spaced relation with a strip of

insulating material between each of the bars, surrounding the inner edges and ends of the bars with an insulating material having the property of hardening under the action of heat and pressure, and applying heat and pressure to harden said material into a body which insulates said bars and firmly holds them in position.

"7. A commutator mold, comprising an annular outer shell having spaced notches in its inner periphery for receiving strips of insulation, an inner shell having notches therein for receiving the inner edges of commutator segment bars, the outer edges of said bars being received between the strips of insulating material positioned on the inner periphery of the outer shell, and means for supporting said shells and holding them in position so that the spaces between the commutator bars may be filled with insulating material and heat and pressure applied thereto."

In the prior art, commutators were constructed of circumferentially arranged bars or segments, supported by strips of insulation and held together by clamping rings or bolts or screws. Appellant was the first to successfully produce a purely molded commutator, wherein the molded insulating material served both to insulate and hold the bars in place, dispensing entirely with mechanical support.

A patent was granted for the article produced, and the present application is confined to the process and mold. The scope of the claims of the patent, as affecting the present application, is stated by the Assistant Commissioner in his opinion, as follows:

"Applicant has been allowed a patent, No. 1,255,681, on the article. Claim 1 of the patent, which was granted on the application of which the present application is a division, reads as follows:

" '1. A commutator comprising metal commutator bars and a body of heat-hardened resinous condensation product holding said bars in place.'

"Claim 4 includes the limitation that the body of resinous condensation product is molded about the bars.

"These claims were allowed in view of evidence presented that no one prior to this applicant had been able to make a successful molded commutator, and that there was therefore invention in using a resinous condensation product, specifically, 'Bakelite,' as the insulating material."

[1] We think the allowance of these claims in the Patent Office does not foreclose appellant from making the present method or process claims, unless barred by the prior art. We are of opinion that appellant's mold contains nothing patentable over the prior art. As held by the Assistant Commissioner:

"Claim 7 is for the commutator mold, and the only feature of this claim not found in the mold of Lundell (September 8, 1891) is the slots in the inner and outer shell by which the commutator segments are held in position. As pointed out by the Examiners in Chief the slots shown in the patent to Lorimer (March 5, 1912) perform the same function as is performed by applicant's slots."

[2] Therefore claim 7 should be disallowed; but as to the process claims we feel constrained to differ from the holding of the Patent Office. The present application was a division of, and was copending with, the application which resulted in the patent for the article. The patent, is therefore not a bar, even if the method or process was disclosed, inasmuch as it was not claimed. Suffolk Co. v. Hayden, 3 Wall. 315, 18 L. Ed. 76; Ide v. Trorlicht Carpet Co., 115 Fed. 137, 145, 53 C. C. A. 341.

The mere fact that the process and product claims might have been consolidated in a single patent furnishes no ground for the rejection of the process claims. Separate patents may be issued for the product and the process.

"A single exercise of the inventive faculties may produce both a process and its product, a machine and the manufacture it creates, a composition of matter and the art by which it is applied to its intended use. In all such cases, if the inventions are truly separable, the inventor is entitled to a monopoly for each, although neither could have been discovered and been made available without the other. A patent for but one, though it may necessarily describe the other, is thus no hindrance to an application for a patent for the unsecured invention; but the new application must be judged according to its own intrinsic merits, as if no previous patent had been granted." Robinson on Patents, § 466.

[3] Leaving out of consideration the product patent, and considering the process claims independently, we are of opinion that this feature of the invention is not anticipated in the prior art. Appellant's process produced the first successful molded commutator. The success over the prior art consisted in producing a commutator which would withstand the rigorous use required of it without the support of rings, bolts or screws. This was accomplished by the novel method of manufacture devised by appellant. After the assembled bars and rings in which the bars are circumferentially spaced are placed in the mold, "powdered 'Bakelite'" is forced "into the crevices and recesses of the mold." When this is completed, the mold is subjected simultaneously to pressure and a high degree of heat, resulting in the softening of the moldable material, the accurate positioning of the bars and the forcing of the moldable material into a compact solid "body which insulates said bars and firmly holds them in position." The basis of the Commissioner's disallowance of the process claims is stated in his opinion as follows:

"Claims 1 to 6 cover a process of making a commutator. Claim 7 is for the mold used in making this commutator. Claims 1 to 5 differentiate from the patent to Lundell only by the statement that the insulating material which is placed between the segment bars has the property of hardening under heat and pressure and that the heat and pressure are applied to harden this material."

It is this step in the process which, we think, constitutes invention.

Coming to the references, the Lieb patent of September 2, 1890, discloses a process in which the insulating material is first prepared "as a fluid, a plastic or a semi-plastic mass," and when the bars are spaced "the insulating material is allowed to flow in, or is pressed in, to the interior of the ring of bars." It will be observed that the conception of softening the moldable material, positioning the bars radially and longitudinally, and forming a complete insulating body simultaneously under heat and pressure, was totally foreign to Lieb.

The disclosure of Lundell is still more remote. When he has the sections or segments arranged in the form of a ring, the ring is forced into a receptacle, when, as he states, "having thus arranged the several parts, I pour into the annular space a suitable insulating material, which, on cooling or drying, becomes hard." He had no conception of accomplishing the result by simultaneous heat and pressure.

[4] While the question of patentability is not entirely free from doubt, we are disposed, in accordance with our rule in such cases, to resolve the doubt in favor of the inventor.

The decision of the Commissioner of Patents is affirmed as to count 7, and reversed as to counts 1 to 6, inclusive, and the clerk is directed to certify these proceedings as by law required.

Affirmed as to count 7, and reversed as to counts 1 to 6, inclusive.