---

## In re BURT et al.

Court of Appeals of District of Columbia.

Submitted January 17, 1928. Decided February 6, 1928.

No. 2028.

1. Patents ⬤⟳120—Allowance of process patent for frozen confection is no bar to allowance of patent for confection itself.

Allowance of patent on process of manufacturing frozen confection, consisting of block of ice cream on stick, is no bar to allowance of patent on such confection itself.

2. Patents ⬤⟳26(1½)—Frozen confection on stick held patentable.

Frozen confection, consisting of small cake of frozen ice cream on stick, *held* patentable as against contention that it required no invention to combine lollipop stick and Eskimo pie.

Appeal from the Commissioner of Patents.

In the matter of the application of Cora W. Burt and the Dollar Savings & Trust Company of Youngstown, Ohio, executors of Harry B. Burt, deceased. From a decision of the Patent Office, refusing the claims of the application, applicants appeal. Reversed.

H. S. Hill and J. F. Robb, both of Cleveland, Ohio, and H. C. Robb, of Washington, D. C., for appellants.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of the Patent Office refusing the claims of the application.

24 F.(2d)—18

The invention relates to a frozen confection on a stick. Claims 1, 3, and 6 are sufficiently illustrative, and are here reproduced:

"1. A frozen confectionery product, including a frozen body portion formed of an edible substance, which is fluid at normal temperatures and congeals by refrigeration, and a stick member partially embedded in the body portion and attached thereto by congelation, the projecting end of the stick member forming a handle."

"3. A frozen confectionery product, including a frozen ice cream body portion, and a stick having one end thereof embedded in the ice cream body portion, the other end of the stick projecting from the body portion and forming a handle by means of which the ice cream body portion can be held while being eaten."

"6. A frozen confectionery product, including an ice cream portion, a handle member attached to the body portion, and an outer covering surrounding the body portion and formed of granulated particles of an edible substance which is comparatively hard and nonsticky at normal temperatures."

In 1922 there was granted patent No. 1,-404,539 to Nelson on so-called "Eskimo pie," consisting of a core of ice cream, wrapped in tinfoil or other appropriate material. The object of the invention, as stated by Nelson, was "to provide a frozen dainty comprising a form-retaining block or brick of ice cream or the like, also to provide an encasement therefor which facilitates its ready handling." This product achieved wide popularity. There was also on the market, and had been for years, the ordinary candy lollipop or sucker. These lollipops are produced by inserting a stick into the warm, sticky candy, which hardens and holds the stick.

Mr. Burt was in the ice cream business, and the idea occurred to him to insert a similar stick in a small block of ice cream. Ice cream is not a sticky substance, but, on the contrary, is oleaginous. To insert a stick in a small cake of frozen ice cream would break the cake apart, and if the cream was less hard the stick would not adhere sufficiently to permit handling. Of course, to be a success, the union between the stick and the frozen cream must be such as to permit the eating of the cream without breaking the union, and to make this result attractive to the public it must be accomplished without human hands touching the article in the process of manufacture.

[1] Finally, Mr. Burt hit upon the idea of freezing the stick in the ice cream; that is,

by inserting the stick in the cream before freezing and then subjecting the mass to refrigeration. His experiments demonstrated that such a process created the desired union between the cream and the stick. The product was placed upon the market and has been a great success. In addition to the present application for a patent on the product, an application for a process patent was filed. The process patent was allowed, but its allowance is no bar to the allowance of this application. See In re Zenk, 50 App. D. C. 25, 267 F. 327.

[2] The Examiner, in passing upon the present application, said: "Merely because applicant's article appears to be new is no basis for the grant of a patent. A patent may not be granted on a new article, unless it is clear that it required the exercise of the inventive faculties to produce the article." The Examiner was of the view that it required no invention to combine the lollipop stick and the Eskimo pie. The Examiners in Chief were of the same view, and the Commissioner, in affirming their decision, said: "Heretofore the candy, while in a warm, plastic state, has been roughly shaped and pressed around an end of the stick by hand, or an end of the stick has been forcibly pushed into the mass, *the cooling and hardening* of which affixed it to the stick more or less securely." The Commissioner, therefore, concluded that it was old "to secure the confection to the stick by a freezing or congealing operation."

We are unable to agree with this conclusion. It is one thing to insert a stick in a warm, soft, sticky substance, that by cooling will adhere thereto, and quite another thing to effect a strong union between a stick and a frozen substance. Nor is the Patent Office quite consistent in its position, for it granted a patent to Nelson on his Eskimo pie, and has since granted him a patent on the process of manufacturing it. In our view, applicant's process and product involve quite as much novelty as is involved in Nelson's process and product. As admitted by the Patent Office, applicant has produced a new article, which has found public favor, and his useful and "happy thought" should be recognized. The quoted claims protect his product, and his alone. It is quite easy, now that he has solved the problem, to reach the conclusion that it was very simple of solution; but the patent law contemplates rewarding the one who really solves it, and not the one who, after its solution, thinks he could have solved it.

The decision is reversed.

Reversed.